UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 14-2694(DSD/HB)

Valerie M. George,

       Plaintiff,

v.                               **ORDER**

Hennepin County,

       Defendant.

      Jeffrey D. Schiek, Esq., and Villaume & Schiek, P.A., 2051 Killebrew Drive, Suite 611, Bloomington, MN 55425, counsel for plaintiff.

      Cheri Sudit, Esq., Hennepin County Attorney's Office, 300 South 6th Street, Minneapolis, MN 55487, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Hennepin County.[1] After a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

---

[1] George originally sued Hennepin County and NorthPoint Health & Wellness Center, Inc., which Hennepin County administers in partnership with a community board of directors. See ECF No. 1; Hassan Dep. at 47:6-10. George then filed an amended complaint naming only Hennepin County as defendant. See Am. Compl. Her allegations and arguments, however, are directed to NorthPoint's conduct. See id. George does not allege that Hennepin County directly engaged in discrimination or retaliation. See id. The court therefore will refer to Hennepin County as Northpoint unless a finer distinction is required.

**BACKGROUND**

This employment-discrimination dispute arises out of NorthPoint Health & Wellness Center, Inc.'s failure to hire plaintiff Valerie George - then 51 years old - as a dental hygienist. George alleges that NorthPoint rejected her application in February 2013 due to her age, and then rejected her subsequent application in May 2013 in retaliation for her filing a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) and the Minnesota Department of Human Rights (MDHR).

**A.   The Parties**

NorthPoint is a community-based health clinic that offers dental services. Hennepin County oversees NorthPoint's hiring process. See Hang Aff. ¶¶ 1-4. Dr. Rochelle Avent-Hassan is a NorthPoint dentist who also runs the dental clinic. Hassan Dep. at 11:23-25, 12:1-5. Dr. Hassan is responsible for hiring dental hygienists for the clinic. Id. at 13:2-6. Linda Miller is the clinic's office manager. Miller Dep. at 5:1-4. George was a hygienist with NorthPoint from 1996 until she was laid off in 2009 due to a reduction in force. Am. Compl. ¶¶ 5-6.

**B.   February 2013 Position**

In February 2013, NorthPoint had an opening for a full-time hygienist. George and 24 others applied for the position. Hang Aff. ¶ 14. Hennepin County assigned human resource staffing

specialist Susan Hang to assist NorthPoint in the hiring process. Id. ¶ 3. Hang worked directly with Miller to draft the job posting and to identify the skills the "best qualified" candidates should possess. Id. ¶¶ 4-5. Miller told Hang that top candidates would be bilingual in English and Spanish, given the clinic's increasingly large Spanish-speaking patient base. Id. ¶ 6; see Wessels Aff. Ex. 1, at 4, 20. Miller also told Hang that L.T.,[2] a clinic employee working in a grant position, would be a strong candidate given her skills, knowledge, and job performance. Hang Aff. ¶ 8. According to Hang, it is not uncommon for a department to have an internal candidate in mind for a new position. Id. ¶ 9.

L.T. submitted an application, but did not indicate that she was bilingual, which excluded her from the top group of candidates. Id. ¶ 10. At Miller's urging, however, L.T. contacted Hang to discuss the meaning of the term "bilingual."[3] Id. ¶ 11. L.T. told Hang that she did not consider herself to be bilingual even though she can communicate with patients in Spanish, because she makes grammatical errors and has to "think about what [she's] going to

---

[2] To maintain privacy, the court will refer to non-parties by their initials. L.T. began as a hygienist at NorthPoint in a temporary position starting in January 2011. Hang Aff. ¶ 17. In 2012, NorthPoint hired L.T. under a grant. Id.

[3] During her tenure at NorthPoint, L.T. regularly communicated with patients in Spanish. Hassan Dep. at 19:3-11, 22:3-5, 23:5-8, 26:19-22, 51:5-23; Miller Dep. at 60:18-25.

3

say before [she] say[s] it."[4]  L.T. Dep. at 17:18-21, 36:16-20. Hang explained that L.T. would be considered bilingual if she could comfortably speak and understand everyday use of the language. Hang Aff. ¶ 11.  Based on the information provided by L.T. regarding her Spanish proficiency, Hang told L.T. she could amend her application to indicate she is bilingual, and L.T. did so. Id.; Wessels Aff. Ex. 4, at 4.

Hang first screened the 25 applications through an electronic system - NeoGov - to filter out those who did not meet the minimum educational qualifications for the position.  Hang Aff. ¶ 12.  The applications did not include the candidate's age, race, or national origin.[5]  See, e.g., Wessels Aff. Ex. 3.  All applicants passed through the first filter. Hang Aff. ¶ 12.  Hang then screened the applicants for the following key skills: licensed dental hygienist, bilingual, experience performing dental/hygienist duties in a community-based environment, reliable transportation, and relevant software experience. Id. ¶ 13; Wessels Aff. Ex. 2, at 2.  Three of the 25 applicants - including L.T. after she amended her application - met all criteria and were placed on a certified list

---

[4] L.T. lived in Panama as a child and spoke Spanish during that period.  L.T. Dep. at 36:13-16.  She communicates with her Panamanian father in Spanish. Id. at 35:9-36:6.

[5] Candidates provide information about age, race, and national origin in a separate form that is not given to hiring supervisors. Wessels Aff. Ex. 9, at 4.  That information is used for statistical purposes, and not to evaluate a candidate's qualifications. Second Hang Aff. ¶ 6.

4

to be considered for hire. Hang Aff. ¶¶ 14-15. George, who indicated she was not bilingual, was not among the three finalists. Id. ¶ 14; Wessels Aff. Ex. 3, at 5.

Hang then sent the names of those on the certified list to NorthPoint through NeoGov. Id. ¶ 15. She did not provide information regarding the candidates not on the certified list to NorthPoint, nor did NorthPoint have independent access to that information. Id. ¶ 16; Hassan Dep. at 35:25-36:3, 52:12-23; Miller Dep. at 56:3-12. There is no evidence in the record that Dr. Hassan, Miller, or any other NorthPoint employee was privy to the broader applicant pool (apart from L.T.) or involved in the screening process. There is also no evidence that anyone at NorthPoint was aware that George had applied for the position. See Miller Dep. at 56:13-19. NorthPoint ultimately hired L.T. Hang Aff. ¶ 17.

### C. First Charge of Discrimination

On March 28, 2013, George filed a charge of age discrimination with the EEOC and cross-filed with the MDHR. Schiek Aff. Ex. W; Am. Compl. ¶¶ 19-20. George asserted that NorthPoint's stated reason for not hiring her - the undisputed fact that she is not bilingual - was pretextual because she is over 40, speaks "some" Spanish, and the person hired was under 40. Id. The Hennepin County Attorney's Office responded after speaking with Dr. Hassan and Miller about the charge, explaining that George's application

was rejected because she did not indicate she was bilingual. Wessels Aff. Ex. 9, at 2-3. Hennepin County further explained that NorthPoint hired L.T., who is younger than George and under 40, because she met all of the criteria and was deemed the best fit for the position. Id. at 3. Hang was not aware of the charge of discrimination until George filed this suit. Second Hang Aff. ¶ 7.

**D.   May 2013 Position**

In early May 2013, NorthPoint received funding to hire two part-time hygienists. Hang Aff. ¶ 20. Hang again was assigned to assist in the hiring process and she worked with Miller to draft the posting. Id. The position required bilingual ability in languages such as Spanish, Hmong, Somali, Russian, Laotian, American Sign Language, and other African languages. Wessels Aff. Ex. 5, at 1-2. NorthPoint again received 25 applications, including one from George.[2] Hang Aff. ¶ 23. Hang used the same screening process described above to narrow the list. Id. Eight of the candidates met all of the required criteria. Id. ¶ 24. George, however, was not among the eight because she indicated that she is not bilingual. Id. ¶ 25. As before, NorthPoint was not aware that George applied for the position because she was filtered out before Hang compiled the certified list. Id. ¶ 27; Miller Dep.

---

[2] As was the case in February, NorthPoint was not aware of any of the applicants' ages during the May hiring process. Second Hang Aff. ¶ 6.

at 56:24-57:5.  The two people hired for the positions are younger than George and under 40, but it is undisputed that both met all required criteria.  Hang Aff. ¶¶ 28-29.

George notes that another rejected applicant, J.M., who is also over 40, was not on the certified list despite meeting all required criteria.  Schiek Aff. Ex. J.  According to Hang, J.M. did not make the list because, although she indicated she had experience volunteering in a community-based environment, she did not provide substantiating details about that work.  Second Hang Aff. ¶¶ 3-4; Schiek Aff. Ex. J, at 5.  There is no evidence in the record that anyone at NorthPoint was aware of J.M.'s application.  See Miller Dep. at 58:13-59:20.

    **E.**    **Second Charge of Discrimination**

In August 2013, George filed another charge of discrimination with the EEOC and the MDHR alleging retaliation.  Am. Compl. ¶¶ 26, 28.  The EEOC and MDHR issued notices of dismissal to George and informed her of her right to sue.  Id. ¶¶ 29, 32.  On June 17, 2014, George filed suit against defendants in Hennepin County, alleging age discrimination and retaliation in violation of the Minnesota Human Rights Act (MHRA) and the Age Discrimination in Employment Act (ADEA).  Defendants timely removed and now move for summary judgment.

**DISCUSSION**

**I.  Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

**II. Age Discrimination Claim**

Age discrimination claims under the MHRA are considered under the same analysis as claims under the ADEA. Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003); see Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 542 (Minn. 2001). The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Evidence of discrimination may be established through direct or indirect evidence. Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 515 (8th Cir. 2011).

    **A.   Direct Evidence**

George contends that summary judgment is inappropriate because she has presented direct evidence of discrimination. Direct evidence "must be strong enough to show a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact-finder that an illegitimate criterion actually motivated the employment decision." Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1042 (8th Cir. 2006) (internal quotations omitted) (alteration in original). Direct evidence can include "evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude, where

9

it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." Id. at 1043 (internal quotations omitted). "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference." Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999). For example, "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process" are not direct evidence of age discrimination. Morgan, 486 F.3d at 1043 (internal quotations omitted).

George points to the testimony of current and former NorthPoint hygienists as direct evidence of discriminatory animus. Specifically, the witnesses - all over the age of 40 - testified that they believed that Dr. Hassan treated employees over the age of 40 differently by (1) making it harder for them to get time off, (2) being more critical of them, and (3) hiring younger new employees. L.I. Dep. at 11:22-12:24, 13:12-14:10; L.M. Dep. at 11:7-13:13; M.M. Dep. at 15:6-14, 16:20-17:6. Those opinions do not constitute direct evidence of discrimination, however, because they merely reflect the employees' anecdotal perceptions about their work environment. See Holmes v. Trinity Health, 729 F.3d 817, 822 (8th Cir. 2013) (rejecting similar statements as direct evidence because "[t]hey do not provide a 'specific link' between

10

the alleged discriminatory motive and the adverse employment decision, but rather merely provide the thoughts and feelings of former employees regarding the workplace").

Indeed, none of the witnesses provided a concrete example of NorthPoint treating older employees differently than younger employees. See L.I. Dep. at 14:3-8 ("Q: Do you think that people who were over the age of 40 that [Dr. Hassan] was more critical of or harder than people under the age of 40?  A: I'm trying to think of an example.  I feel that she was.  I'm trying to think of a direct example, but I can't give you one."); L.M. Dep. at 12:22-25 (answering the request for specific examples of discrimination as follows: "I feel like just based on my relationship with [Dr. Hassan] that there was more emphasis on my production, on my shortcomings, than there were some of the people who ... had been more recently hired"); M.M. Dep. at 15:6-13 ("Q: [D]o you believe that [Dr. Hassan] was treating people differently that were over the age of 40 compared to people who were under the age of 40?  A: Yes, I do that.  Q: And can you give me some examples for the basis of that?  A: It was harder to get time off.").[3]  Nor did any witness recount overhearing or being subjected to ageist comments. To the contrary, M.M. testified that she never heard anyone in NorthPoint's administration, including Dr. Hassan, discussing

---

[3] Dr. Hassan admits to generally not approving leave requests in a timely manner given her busy schedule.  Hassan Dep. at 56:7-22.

11

employees' ages. M.M. Dep. 17:13-19. Further, L.M. testified that Dr. Hassan's perceived differential treatment was not based on age, but rather on length of service. L.M. Dep. at 11:17-21.

Even if the above statements could be viewed as evidence of an ageist animus at NorthPoint, George has failed to link such animus to her rejection. Hennepin County, and not NorthPoint, rejected George for non-discriminatory reasons before compiling the certified list of candidates. And there is no evidence that either Hennepin County or NorthPoint was aware of the applicants' ages or filtered applicants on the basis of age. As a result, George has failed to establish a specific link between NorthPoint's alleged age animus and its failure to hire her using the direct evidence method.

### B.   Indirect Evidence

Because George has not presented direct evidence of discrimination, the court examines her claim under the burden-shifting analysis first set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Chambers, 351 F.3d at 855 (ADEA and MHRA claims both analyzed under McDonnell Douglas). The analysis proceeds in three steps. Id. First, George must establish a prima facie case of age discrimination. Id. If she succeeds, the burden of production shifts to NorthPoint to articulate a legitimate, non-discriminatory reason for its conduct. Id. If NorthPoint offers such a reason, George must then demonstrate that the reason is

12

really a pretext for unlawful discrimination.  Id.

### 1. Prima Facie Case

To establish a failure to hire claim, George must demonstrate that (1) she is over 40, (2) she was qualified for the position, (3) she was not hired for the position, and, (4) the employer filled the position with a younger person.  Tusing, 639 F.3d at 515.  At all times, the ADEA requires a plaintiff "to establish that age was the 'but-for' cause of the employer's adverse action."[4]  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009).  The first, third, and fourth elements are not in dispute.  Defendant argues, however, that George was not qualified for the position because she is not bilingual.  The court disagrees.

In order to be deemed "qualified" at this stage of the analysis, George need only establish that she met the minimum "objective qualifications for the job."  Legrand v. Trs. of Univ. of Ark. at Pine Bluff, 821 F.2d 478, 481 (8th Cir. 1987); see also Hase v. Mo. Div. of Emp't Sec., 972 F.2d 893, 896 (8th Cir. 1992) (holding that in order to establish a prima facie case under the McDonnell Douglas framework, a plaintiff must demonstrate that he

---

[4] It is unsettled whether an age discrimination claim under the MHRA requires "but for" or merely "motivating factor" causation.  See Gifford v. Target Corp., No. 10-2049, 2011 WL 3876420, at *7 n.5 (D. Minn. Aug. 31, 2011).  This distinction is immaterial for purposes of this motion, however, because the court finds that George has put forth no evidence showing that age was a motivating factor in NorthPoint's hiring decisions.

meets the "minimum qualifications for the position"). As George notes, the February posting did not explicitly require applicants to be bilingual, but rather expressed a preference for bilingual candidates. See Wessels Aff. Ex. 2, at 1 ("Candidates bilingual in Spanish and English are encouraged to apply."); id. at 2 ("Best Qualified Candidates will have: Bilingual in Spanish and English preferred..."). There is no dispute that George met the basic job requirements. As a result, George was minimally qualified for the position and has established a prima facie case of age discrimination.

### 2. Non-discriminatory Reasons for Hiring L.T.

NorthPoint has articulated a legitimate non-discriminatory reason for hiring L.T. over George. First, NorthPoint wanted to hire a hygienist who could communicate effectively with the clinic's increasingly large Spanish-speaking client base. Wessels Aff. Ex. 1, at 4, 20; Hassan Dep. at 42:6-13, 41:5-23.[5] Second, L.T. proved herself during her tenure at NorthPoint as a reliable and capable hygienist who was able to communicate well with Spanish-speaking patients. See Hassan Dep. at 19:3-11, 22:3-5,

---

[5] George argues that Dr. Hassan's testimony should be discounted as lacking in credibility. However, "[t]his burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

23:5-8; Miller Dep. at 60:18-25. Based on the skills she exhibited at work, NorthPoint considered L.T. to be bilingual within the meaning of the job posting. Hassan Dep. at 26:19-22. In light of these legitimate non-discriminatory reasons, the burden shifts back to George to show that they are pretext for age discrimination.

### 3. Pretext

"When an employer articulates a nondiscriminatory reason for an employee's discharge ... 'the factual inquiry proceeds to a new level of specificity.'" Dammen v. UniMed Med. Ctr., 236 F.3d 978, 981 (8th Cir. 2001) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)). In other words, "the question is much more focused: Has the plaintiff shown that the explanation extracted from the defendant by virtue of the prima facie case is a pretext for discrimination?" Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779 (8th Cir. 1995). George argues that NorthPoint's explanations for rejecting her application are pretextual.

George first argues that her application was rejected due to her age because (1) Dr. Hassan crafted the job description to meet L.T.'s qualifications, (2) L.T. does not speak Spanish, (3) George speaks some Spanish, but NorthPoint did not contact her to determine the extent of her language skills or to allow her to amend her application, and (4) NorthPoint hired L.T., who is substantially younger than George. None of these contentions support a finding of pretext.

15

First, the fact that NorthPoint knew it wanted to hire L.T. before posting the position does nothing to establish discriminatory animus. Rather, it shows that L.T. had impressed Dr. Hassan, and others, during her two and a half years at NorthPoint and that she was deemed an excellent fit for the position based on her performance. <u>See</u> Hassan Dep. at 51:5-23. There is no evidence that NorthPoint included the bilingual preference on the application simply to fit L.T.'s qualifications or to disqualify George. To the contrary, the record amply supports NorthPoint's need for a bilingual hygienist. Second, the record establishes that L.T. is bilingual for purposes of the position. Third, NorthPoint did not contact George to clarify her language skills because it was unaware that she had applied for the position. Hang excluded George from the certified list given George's own statement that she is not bilingual. George is correct that L.T. was treated differently in that she was allowed to amend her application to more accurately reflect her language skills. But NorthPoint has adequately explained that differential treatment without raising any hint of discriminatory animus. Fourth, although L.T. is substantially younger than George, this fact alone does not establish pretext. The record as a whole supports NorthPoint's explanation that it hired L.T. because she was a capable hygienist with the desired language skills.

George next argues that NorthPoint's preference for a Spanish-

speaking hygienist was unnecessary and pretextual because (1) Dr. Hassan testified inconsistently about why NorthPoint wanted a bilingual hygienist, and (2) NorthPoint does not assign hygienists to patients based on language ability.  Neither fact discredits NorthPoint's stated non-discriminatory reasons for hiring L.T.

George also argues that NorthPoint's failure to hire, or even interview, J.M. in May 2013 establishes pretext.  The court disagrees.  As explained by Hang, J.M. did not make the certified list because her application did not support her assertion that she had experience working in a community-based environment.  In other words, J.M. was not qualified for the position.  George has not undermined Hang's rational explanation, nor has she demonstrated that "the circumstances permit a reasonable inference of discriminatory animus."  Haigh v. Gelita USA, Inc., 632 F.3d 464, 470 (8th Cir. 2011).

It is important to remember that the court does not "sit as a 'super-personnel' department to second guess the wisdom of a business's personnel decisions."  Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 957 (8th Cir. 2001); see also McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 511 (8th Cir. 1995) ("[E]mployers have wide latitude to make business decisions."). "[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so

17

long as it truly was the reason for the plaintiff's termination." Wilking v. Cty. of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998) (internal quotations omitted).  George has failed to present evidence supporting a finding of pretext regarding NorthPoint's legitimate non-discriminatory reasons for hiring L.T. over George. As a result, summary judgment is warranted on the discrimination claim.

**III. Retaliation Claim**

George alleges that NorthPoint failed to hire her in May 2013 in retaliation for filing a charge of discrimination relating to NorthPoint's failure to hire her in February 2013.[6]  The court again examines George's claim under the McDonnell Douglas burden shifting analysis. Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004).  To establish a prima facie case of retaliation, George must show that: (1) she engaged in protected conduct; (2) reasonable applicants would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 914 (8th Cir. 2006).  The first two elements are met. George's claim fails, however, because she has not established a causal connection

---

[6] George alleges that NorthPoint rejected her application in May 2013 due to retaliation, not age discrimination. See Am. Compl. ¶¶ 55-63, 86-99.

between her EEOC complaint and her rejection.

A causal link requires evidence that "retaliatory motive played a part in the adverse employment action." Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (quotation omitted). The mere fact that George was not hired in May 2013 after filing a charge of discrimination in March 2013 is insufficient to establish a retaliatory motive. See Peterson v. Scott Cty., 406 F.3d 515, 524 (8th Cir. 2005) (more than temporal connection between complaint and adverse action necessary to establish retaliation), abrogated in part on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011); Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011) (holding that an inference of retaliation "vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months"). Moreover, timing alone is insufficient to establish causation where "other evidence overwhelmingly suggests another legitimate reason for the adverse employment action." Jackson v. Flint Ink N. Am. Corp., 370 F.3d 791, 798 (8th Cir. 2004), mod. on reh'g on other grounds, 382 F.3d 869, 870 (8th Cir. 2004).

As with the February hiring process, NorthPoint has proffered legitimate non-retaliatory reasons for not hiring George. The job posting states that NorthPoint was looking for applicants bilingual in Spanish, Hmong, Somali, Russian, Laotian, American Sign

19

Language, and other African languages. NorthPoint hired two people, one of whom speaks Somali and the other of whom is proficient in Spanish and American Sign Language. Hang Aff. ¶¶ 28-29. George argues that NorthPoint changed the hiring criteria to exclude her from the certified list, but there is no evidence to support that argument.[7] Nor is there evidence that NorthPoint was aware that George had applied for the position in May. Accordingly, George has failed to establish a causal connection between her rejection and her complaint, and summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to for summary judgment [ECF No. 30] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 8, 2015

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court

---

[7] It bears noting that George would not have made the certified list for the second job posting even if the posting had been identical to the first, because she is not bilingual. Only bilingual candidates made the certified list for both postings and, as discussed above, NorthPoint had a legitimate non-discriminatory reason for seeking bilingual hygienists.